IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Tri-Lift NC, Inc., ) | |
| ) | |
| Plaintiff, ) | C.A. No. 6:20-cv-02712-HMH |
| ) | |
| vs. ) | **OPINION & ORDER** |
| ) | |
| Drive Automotive Industries of America, ) | |
| Inc., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Plaintiff Tri-Lift NC, Inc.'s ("Tri-Lift") motion to strike certain affirmative defenses and to dismiss certain counterclaims in Defendant Drive Automotive Industries of America, Inc.'s ("Drive") amended answer and counterclaims. For the reasons set forth below, the court grants in part and denies in part Tri-Lift's motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of an October 2017 "Full Maintenance Service Agreement" ("Agreement") between Tri-Lift and Drive. (Compl., generally, ECF No. 1; & Ex. 1 (Agreement), ECF No. 1-1.) Tri-Lift is in the business of selling, leasing, and servicing forklifts. (Id. at ¶ 6, ECF No. 1.) Drive is involved in the production of automotive body structures. (Id. at ¶ 7, ECF No. 1); (Am. Ans. & Countercls. ¶ 7, ECF No. 24.) The Agreement required Tri-Lift to perform maintenance and repair services on a fleet of forklifts located at Drive's facility in Piedmont, South Carolina. (Comp. ¶¶ 9-10, ECF No. 1; & Ex. 1 (Agreement), ECF No. 1-1.) The term of the Agreement was four years. (Id. Ex. 1 (Agreement) ¶¶ 3, 16), ECF No. 1-1.) However, the Agreement permitted early termination pursuant to specific events defined therein. (Id., ECF No. 1-1.)

1

Tri-Lift contends that Drive terminated the Agreement on April 3, 2020 without notice and forced Tri-Lift to immediately vacate its work station at Drive's facility. (Id. at ¶ 20, ECF No. 1.) Following the termination of the Agreement, Tri-Lift issued five separate invoices to Drive for monthly contract maintenance, parts, and overtime hours totaling $268,107.66. (Id. at ¶¶ 23-28, ECF No. 1); (Am. Ans. & Countercls. ¶¶ 23-28, ECF No. 24.) Drive has not paid the amounts set forth in the invoices and denies any obligation to pay the invoices or any other money to Tri-Lift. (Am. Ans. & Countercls. ¶ 28, ECF No. 24.)

On July 23, 2020, Tri-Lift filed the instant lawsuit, alleging breach of contract against Drive. (Compl., generally, ECF No. 1.) On August 17, 2020, Drive filed an answer and counterclaims. (Ans. & Countercls., ECF No. 5.) On September 8, 2020, Tri-Lift filed a motion to dismiss and to strike. (Mot. Dismiss, ECF No. 8.) On October 26, 2020, Drive filed an amended answer and counterclaims. (Am. Ans. & Countercls., ECF No. 24.) The court dismissed Tri-Lift's motion to dismiss and strike as moot on November 3, 2020. (Opinion & Order, ECF No. 26.) On November 23, 2020, Tri-Lift filed a motion to dismiss certain counterclaims in Drive's amended answer and to strike certain affirmative defenses raised by Drive. (Mot. Dismiss, ECF No. 28.) Drive filed a response on December 21, 2020. (Resp., ECF No. 32.) Tri-Lift replied on January 8, 2020. (Reply, ECF No. 36.) This matter is now ripe for review.

## II. Discussion of the Law

### A. Rule 12(f)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id.

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Rule 12(f) Standard**

3

Rule 12(f) of the Federal Rules of Civil Procedure authorizes the court to "strike from the pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." When presented with a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader." Clark v. Milam, 152 F.R.D. 66, 71 (S.D. W. Va. 1993). A motion to strike is a drastic remedy that is disfavored by courts. Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).

### C. Motion to Strike

Tri-Lift moves to strike the affirmative defenses of "comparative negligence" and "fraud/material misrepresentation" from Drive's amended answer and counterclaims. (Mem. Supp. Mot. Dismiss 20-21, ECF No. 28-1.) Tri-lift argues that comparative negligence is inappropriate as an affirmative defense in the instant case because comparative negligence solely applies to negligence causes of action, and the only cause of action Tri-Lift alleges in its complaint is a claim for breach of contract. (Id., ECF No. 28-1.) In response, Drive withdrew this affirmative defense without prejudice and with the right to reinstate it. (Resp. 23, ECF No. 32.) However, after review, the court grants Tri-Lift's motion to strike Drive's affirmative defense of comparative negligence with prejudice. See Ritter & Assocs., Inc. v. Buchanan Volkswagen, Inc., 748 S.E.2d 801, 805 (S.C. Ct. App. 2013) ("[U]nder South Carolina law, the doctrine of comparative negligence is only applicable to cases alleging negligence as a cause of action."). There is no basis to reinstate a comparative negligence affirmative defense in a breach of contract action.

Tri-Lift also argues that Drive's affirmative defense for fraud/material misrepresentation fails to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil

4

Procedure. See Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc., 888 F.3d 696, 704 (4th Cir. 2018) ("[D]efendants must satisfy Rule 9(b) when they plead affirmative defenses sounding in fraud."). (Mem. Supp. Mot. Dismiss 20-21, ECF No. 28-1.) Drive's affirmative defense for fraud/material misrepresentation incorporates its counterclaims by reference. (Am. Ans. & Countercls. 8, ECF No. 24.) As discussed below, the court finds that Drive's counterclaim for fraud satisfies the heightened pleading standard required by Rule 9(b) and states a claim that is plausible on its face. Thus, Drive's fraud/material misrepresentation affirmative defense incorporating its counterclaim for fraud satisfies the heightened pleading standard. Therefore, the court denies Tri-Lift's motion to strike Drive's affirmative defense of fraud/material misrepresentation.

### D. Motion to Dismiss

### (i) Negligence

Tri-Lift argues that Drive's counterclaim for negligence should be dismissed because it is barred by the economic loss rule. (Mem. Supp. Mot. Dismiss 10-16, ECF No. 28-1.) In response, Drive contends that the economic loss rule is inapplicable. (Resp. 14-17, ECF No. 32.)

The theory behind the economic loss rule is that commercial entities entering into a contract have the opportunity to allocate risk, "whereas tort risks are assigned as a matter of law." Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F. Supp. 1027, 1049 (D.S.C. 1993), aff'd, 46 F.3d 1125 (4th Cir. 1995). To allow a party to recover in tort what he cannot recover in contract permits that party to receive a better deal than what was bargained for by the parties. See generally Purvis v. Consol. Energy Prods. Co., 674 F.2d 217, 221 (4th Cir. 1982).

"In most instances, a negligence action will not lie when the parties are in privity of contract. When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action." Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 463 S.E.2d 85, 88 (S.C. 1995). "For example, South Carolina courts have permitted negligence actions to proceed against engineers and lawyers based on their professional duties to plaintiffs." Palmetto Linen Service, Inc. v. U.N.X., Inc., 205 F.3d 126, 129 (4th Cir. 2000). Therefore, Drive must establish a special relationship arising separately from the Agreement to support a counterclaim for negligence.

Drive alleges Tri-Lift owed it the duties of "reasonable skill, due care and good faith[,]" separate from the Agreement, "[b]y virtue of the relationship of the parties and the trade customs and practices resulting from such relationship." (Am. Ans. & Countercls. ¶ 131, ECF No. 24.) However, Drive has failed to cite any legal authority establishing a special relationship between the parties or any independent duties owed by Tri-Lift. Further, after a thorough review, the court finds none. See Palmetto Linen Serv., 205 F.3d at 126; Bahringer v. ADT Sec. Services, Inc., 942 F. Supp. 2d 585, 590 (D.S.C. 2013).

In addition, Drive argues that its tort claims are grounded in duties separate from the Agreement because Tri-Lift breached industry standards. (Resp. 14-17, ECF No. 32.) Drive relies on Eaton Corp. v. Trane Carolina Plains, 350 F. Supp. 2d 699, 702 (D.S.C. 2004). In Eaton, a district court noted that "[w]here there is a special relationship between the parties that is independent of the contract, . . . there exists a duty of care whose breach will support a tort action." Id. Further, "[t]he breach of an industry standard may establish that a special duty

outside of the contract exists, and thus prevent application of the economic loss rule." Id. at 702-03.  However, a review of South Carolina case law finds that no court has found that the violation of an industry standard can give rise to a special duty.  Therefore, under South Carolina law, the breach of an industry standard is not an exception to the economic loss rule.  See Burris Chem., Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993) ("[F]ederal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion."); see also Bennett v. Ford Motor Co., 236 F. Supp. 2d 558, 562-63 (D.S.C. 2002) (Recognizing that expanding South Carolina tort law is "not the role of this [c]ourt" and thus refusing to recognize an exception to the economic loss rule for a breach of industry standards.).

Accordingly, the court grants Tri-Lift's motion to dismiss Drive's counterclaim for negligence.

### (ii) Negligent Misrepresentation

Tri-Lift argues that Drive's counterclaim for negligent misrepresentation is also barred by the economic loss doctrine.  (Mem. Supp. Mot. Dismiss 10-16, ECF No. 28-1.)  Under South Carolina law, a claim for negligent misrepresentation requires a plaintiff to prove the following six elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

Quail Hill, LLC v. County of Richland, 692 S.E.2d 499, 508 (S.C. 2010) (citation omitted).  Based on the analysis above, the court finds Drive's negligent misrepresentation counterclaim is barred by the economic loss doctrine because Drive has failed to allege a special relationship

7

arising separately from the Agreement.  See, e.g., Besley v. FCA US, LLC, No. 1:15-01511-JMC, 2016 WL 109887, *4-5 (D.S.C. January 8, 2016) (unpublished).  Therefore, Tri-Lift's motion to dismiss Drive's counterclaim for negligent misrepresentation is granted.

### (iii) Fraud

Tri-Lift argues that Drive's counterclaim for fraud should be dismissed because it fails to comply with the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b) and fails to plead a plausible claim.  (Mem. Supp. Mot. Dismiss 17-20, ECF No. 28-1.)  Under South Carolina law, to state a claim for fraud Tri-Lift must prove the following elements:

> (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

Schnellmann v. Roettger, 645 S.E.2d 239, 241 (S.C. 2007) (citation omitted).  Rule 9(b) requires Tri-Lift to describe with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted).  Drive argues that Tri-Lift's counterclaim fails to identify the person(s) who made the alleged misrepresentations.  (Mem. Supp. Mot. Dismiss 17, ECF No. 28-1.)  However, Drive's counterclaim alleges that the misrepresentations were made by Tri-Lift, and "Rule 9(b) [does not] require the identification of individuals within a defendant corporation."  United States v. Berkeley Heartlab, Inc., 225 F. Supp. 3d 487, 500 (D.S.C. 2016).

Tri-Lift further disputes certain factual allegations in Drive's fraud counterclaim and argues that Drive has not alleged facts that show Tri-Lift knowingly made false statements with

the intent to defraud Drive. (Mem. Supp. Mot. Dismiss 17-20, ECF No. 28-1.) However, Drive alleges that Tri-Lift intentionally invoiced Drive for work that Tri-Lift knew had not been performed in order to induce Drive to pay inflated charges. (See Am. Ans. & Countercls. ¶¶ 139-145, ECF No. 24.) Taken in the light most favorable to Drive, it has stated a plausible claim for fraud. As a result, Tri-Lift's motion to dismiss Drive's fraud counterclaim is denied.

### (iv) South Carolina Unfair Trade Practices Act

The South Carolina Unfair Trade Practice Act ("SCUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). "'*Trade*' and '*commerce*' shall include the advertising, offering for sale, sale or distribution of any services . . . ." Id. § 39-5-10(b). To maintain a counterclaim pursuant to the SCUTPA, Drive must establish: "(1) that [Tri-Lift] engaged in an unlawful trade practice, (2) that [Drive] suffered actual, ascertainable damages as a result of [Tri-Lift's] use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by [Tri-Lift] had an adverse impact on the public interest." Havird Oil Co. Inc. v. Marathon Oil Co., Inc., 149 F.3d 283, 291 (4th Cir. 1998) (citing Daisy Outdoor Advertising Co., Inc. v. Abbott, 473 S.E.2d 47, 49 (S.C. 1996)).

Drive alleges that Tri-Lift engaged in unfair or deceptive trade practices by submitting inflated invoices and invoices for services and obligations that were not completed. (See Am. Ans. & Countercls. ¶ 154, ECF No. 24.) Tri-Lift argues that Drive's SCUTPA counterclaim must be dismissed because Drive has failed to provide specific facts in support of its allegations of an adverse impact on the public interest. (Mem. Supp. Mot. Dismiss 5-8, ECF No. 28-1.) In

response, Drive argues that it has satisfied the public interest element by alleging potential for repetition. (Resp. 12-14, ECF No. 32.)

"[A]dverse effect on the public must be proved by specific facts." Jefferies v. Phillips, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994). Further, "conduct which only affects the parties to the transaction provides no basis for a [SCUTPA] claim." Id. (Citation omitted). "One way a plaintiff can allege adverse public impact is by pleading facts demonstrating the potential for repetition of the defendant's actions." PTA-FLA, Inc. v. ZTE Corp., 715 F. App'x 237, 243 (4th Cir. 2017) (unpublished) (citing Daisy, 473 S.E.2d at 49-50). Potential for repetition is generally shown by: (1) "showing the same kind of actions occurred in the past," or (2) "showing the company's procedures create a potential for repetition of the unfair and deceptive acts." Crary v. Djebelli, 496 S.E.2d 21, 23 (S.C. 1998).

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Drive has failed to allege a single fact in support of its conclusory allegation that "Tri-Lift's unlawful trade practices have had an adverse impact on the public interest as they not only have the potential for repetition, but have been repeated." (Am. Ans. & Countercls. ¶ 155, ECF No. 24.) "The mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element." Jefferies, 451 S.E.2d at 24. Drive's conclusory allegations, without supportive facts, are insufficient to survive the motion to dismiss. See Ethox Chem., LLC v. Coca-Cola Co., C.A. No. 6:12-CV-01682-TMC, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013) (unpublished).

Accordingly, the court grants Tri-Lift's motion to dismiss Drive's counterclaim for violation of the SCUTPA.

### III. CONCLUSION

Based on the foregoing, Tri-Lift's motion to strike is granted for Drive's affirmative defense of comparative negligence and denied for Drive's affirmative defense of fraud/material misrepresentation. Further, Tri-Lift's motion to dismiss is granted for Drive's counterclaims for negligence, negligent misrepresentation, and violation of the SCUTPA and denied for Drive's counterclaim for fraud.

It is therefore

**ORDERED** that Tri-Lift's motion to strike and to dismiss, docket number 28, is granted in part and denied in part.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
January 13, 2021